Larry Froelich, Executive Director Kansas State Board of Pharmacy Landon State Office Building 900 S.W. Jackson, Room 513 Topeka, Kansas 66612-1231
Dear Mr. Froelich:
As Executive Director of the Kansas State Board of Pharmacy, you ask whether the company Rx Furniture Medic is in violation of K.S.A. 65-636 by its use of the prescription symbol "Rx" in its name and, if so, whether "Rx Furniture Medic" as a federally registered trademark is exempt from that Kansas statutory prohibition.
Furniture Medic obtained federal registration on March 7, 1995 for its service mark consisting of the symbol "Rx" on a simulated wood background. According to Furniture Medic, the service mark is not exhibited at any store or other building, but is only used in advertising and displayed on company and franchisee owned vehicles. Furniture Medic and its franchisees are in the business of refinishing and repairing wood furniture, and do not sell prescription or non-prescription drugs, medications or any related products.
K.S.A. 65-636 provides:
 "It shall be unlawful for any person, who is not legally licensed as a pharmacist by the state board of pharmacy, or any person, firm or corporation who does not have in continuous employ, at each place of business, a pharmacist licensed by the state board of pharmacy, to take, use or exhibit the title "drugstore," "pharmacy" or "apothecary" or any combination of such titles, or any title or description of like import, or any other term designed to take the place of such title."
K.S.A. 65-1626(s)(3) defines "pharmacy," "drug store" or "apothecary" as a premises, laboratory, area or other place where the characteristic symbols of pharmacy or the characteristic prescription sign "Rx" may be exhibited.
 "The Rx symbol generally is understood to be a contraction of the Latin verb recipe, meaning "take thou" or "you take." Some historians believe this symbol originated from the sign of Jupiter, employed by the ancients in requesting aid in healing. Gradual distortion through the years has led to the symbol currently used. Today, the symbol is representative of both the prescription and pharmacy itself." Remington's Pharmaceutical Sciences, Philadelphia College of Pharmacy and Science, 18th ed. (1990).
We thus consider the symbol "Rx" to be a term designed to take the place of titles such as "drugstore," "pharmacy" or "apothecary." Accordingly, inappropriate use of the symbol "Rx" would violate K.S.A. 65-636.
We note that the definition of "pharmacy," "drug store" or "apothecary" is tied to a "premises, laboratory, area or other place" and that "premises" refers only to a "building or structure." K.S.A.65-1626(s). However, we also note that the criminal prohibition found at K.S.A. 65-636 does not contain such a limitation. There the prohibition is against any
taking, using or exhibition of the specified titles and terms, which in our opinion includes the symbol "Rx."
The only Kansas case involving K.S.A. 65-636 is KansasState Board of Pharmacy v. Wilson, 8 Kan. App. 2d 359
(1983) in which the defendant operated a health food store in Wichita under the name of "Nature's Farmacy." The defendant had registered with the state of Kansas a service mark and trademark consisting of the words "Nature's Farmacy." His business sold health foods and vitamins but not prescription or nonprescription drugs. The Court noted that:
 "[I]f the word `Farmacy' means, signifies or implies the same as `pharmacy' the defendant is a pharmacy under the [Regulation of Pharmacists] act. Although the defendant contends that his word `Farmacy' derives from the word `farm' and connotes agricultural products, it is phonetically indistinguishable from `pharmacy.' One hearing a radio commercial for defendant's business would assume he sold prescription drugs. Moreover, the defendant's letterheads use the mortar and pestle symbol, a `characteristic symbol' of a pharmacist." 8 Kan. App. 2d at 360-361.
The Court held that "Farmacy" was a word of similar import to "pharmacy" under the K.S.A. 65-1626(s). Against the defendant's contention that the Regulation of Pharmacists Act was only concerned with regulating the sale of drugs and medicines, the Court stated:
 "If the legislature had intended in the Pharmacy Act only to control the sale of drugs and not to control people who hold themselves out to the public as druggists but are not, K.S.A. 1982 Supp. 65-1626(s) would only have contained subsection (1), and subsections (2) and (3) would have been deleted. K.S.A. 65-636, while not a part of the Pharmacy Act, is a specific pronouncement of legislative intent to regulate deception in this area." 8 Kan. App. 2d at 361.
Finding the use of the word "Farmacy" to be the use of a deceptive name, the Court held that the Board of Pharmacy could properly seek injunctive relief under the Pharmacy Act as well as under K.S.A. 65-636. In addition, the Court addressed the slippery issue of degrees of deception by favorably referring to LeDrugstore v. New York State Board of Pharmacy,307 N.E.2d 249 (1973).
 "In Le Drugstore, a `mini-department store' was denied the right to have the word `drug' in its business name despite a specific disclaimer in its advertising. The New York statute prohibiting the use of the word `drug store' by any business other than a licensed pharmacy was held constitutional. The New York Court said:
 `It is argued that plaintiff has misled no one by the use of `drug store' in its name. It does not follow, however, that it is unreasonable and of no importance that the prohibition of the statute be applied. The words `drug store' signify a place where drugs are dispensed by trained licensed individuals. To debase the significance of the term `drug store,' by implying exceptions in the statute, might create unwarranted confusion in the public, if not in one instance, at least if the use proliferated [citations omitted]. If that be true, it may not be said that application of the statute according to its terms is unreasonable or arbitrary, or is not within the legislative intent.' pp. 302-03" 8 Kan. App. 2d at 362-363.
The Court in Le Drugstore refused to imply an exception to the unequivocal language of a New York statute which prohibited anyone from conducting a business establishment described as a "drug store" unless it was a licensed pharmacy, and concluded that the company had no right to use the name "drug store" even though no drugs were sold and the conduct of a pharmacy was expressly and publicly disclaimed.
Thus, in our opinion Furniture Medic's use and exhibition of the symbol "Rx" violates K.S.A. 65-636 and, absent the factor of Furniture Medic's registration of the symbol "Rx" as a service mark, the Kansas Board of Pharmacy could successfully seek injunctive relief. However, the more difficult issue is whether Furniture Medic's federal registration of the symbol "Rx" as a service mark exempts Furniture Medic from compliance with K.S.A. 65-636. In other words, whether the prohibition of K.S.A.65-636 is enforceable against Furniture Medic in relation to its use and exhibition of the symbol "Rx" when that symbol is federally registered as a service mark. We thus turn to trademark law.
From 74 Am.Jur.2d Trademarks and Tradenames § 1 (1974) we learn:
 "A `trademark' may be defined as a sign, device, or mark by which the articles produced or dealt in by a particular person or organization are distinguished or distinguishable from those produced or dealt in by others. Under the Trade-Mark Act (Lanham Act), the term `trademark' includes any word, name, symbol, or device, or any combination thereof, adopted and used to identify goods and distinguish them from others." p. 704
The Lanham Trademark Act provides for certificates of registration, their issuance and form. 15 U.C.S. § 1057. A certificate of registration of a mark is prima facie evidence of the validity of the mark and its registration, as well as of the ownership and exclusive right to use the mark in commerce or in connection with the goods or services. 15 U.C.S. § 1057. However:
 "Federal registration of a mark does not create any new substantive rights to use the mark or to assert rights based on ownership. It merely recognizes rights which have been acquired by appropriation, and provides additional remedies for their protection." 74 Am.Jur.2d Trademarks and Tradenames § 75 (1974).
Nothing in the Lanham Trademark Act, 15 UCS § 1051 etseq., and amendments thereto, directly addresses the interplay between registered trade or service marks and valid prohibitions under state law. The following is, however, instructive.
 "In 1982 Congress added § 39(b) to the Lanham Act. Section § 39(b) [now 15 U.S.C. § 1121(b)] provides that:
 `No state or other jurisdiction of the United States or any political subdivision, or any agency thereof may require alteration of a registered mark, or require that additional trademarks, service marks, trade names, or corporate names that may be associated with or incorporated into the registered mark be displayed in the mark in a manner different from the display of such additional trademarks, service marks, tradenames, or corporate names contemplated by the registered mark as exhibited in the certificate of registration issued by the United States Patent and Trademark Office.'
 "The 1982 addition, sometimes known as the `Century 21 Amendment,' was enacted in response to problems encountered by Century 21, a nationwide real estate brokerage franchisor, when various state regulatory agencies required varying displays of its federally registered service mark. Some states required that the franchisor's mark be displayed in a format covering no more than 50 percent of the surface area, with the local franchisee's name comprising the other 50 percent. Other states adopted a 66/33 or 33/66 ratio, making a nationwide uniform display impossible. The federally registered mark was in a format of 20 percent for display of the name of the local franchisee. The federal courts had rejected a constitutional challenge to a Nevada format regulation.
 "Senator Hatch stated that the purpose of the amendment was to ensure that owners of federally registered marks will be permitted to use their marks in interstate commerce without interference by local regulation. The House Report noted that the amendment limits state power as to the display of additional marks or names `in the mark' as different from the federally registered format and does not restrict state power to control other types of the use of federally registered marks in advertising". (Emphasis added.) 3 McCarthy on Trademarks and Unfair Competition § 22.02(3) (1996).
We have been able to locate only one case, BeatriceFoods Co. v. State of Wisconsin, 223 U.S.P.Q. 75 (W.D.Wis. 1983) which directly addresses this particular provision of the Trademark Act. A Wisconsin statute prohibited the use of the word "butter" in connection or association with the sale or advertisement of any butter substitute substance. Beatrice Foods sought to restrain the state of Wisconsin from enforcing that statute in relation to a butter substitute product sold under the federally registered trademark "Buttermatch." As a part of its decision to grant a preliminary injunction, the Court stated:
 "BUTTERMATCH is a federally registered trademark. Title 15 U.S.C. § 1121a [now 15 U.S.C. § 1121(b)] forbids state interference with a registered trademark. The statute seems directed at fact situations like that presented here. See H. Rep. No. 778, 97th Cong., 2d Sess. 3 reprinted in 1982 U.S. Code Cong. Ad. News 2621. Federal trademarks are preemptive in nature. Defendants cannot require plaintiff to change its registered trademark in order to comply with state law. Id." 233 U.S.P.Q 75, p. 5.
While at first glance this case would appear to be dispositive of the issue in favor of federal preemption, a more careful reading of 15 U.S.C. § 1121(b) and the Court's holding demonstrate otherwise. That amendment prohibits states from requiring any alteration of registered service marks and prohibits the states from requiring that any additional names associated with the mark be displayed in a manner different from the registered mark. In other words, in relation to how a service mark is displayed, 15 U.S.C. § 1121(b) is, as the court in Beatrice Foods noted, explicitly "preemptive in nature." See also Mobil Oil Corporationv. Virginia Gasoline Marketers, 34 F.3d 220, 226, n. 3 (4th Cir. 1994) (15 U.S.C.A. § 1121 specifically preempts state law.) Under that section of the federal trademark law, the Court found that the state of Wisconsin could not require Beatrice Foods to alter the display of its federally registered trademark in order to comply with state law.
In our opinion, however, 15 U.S.C. § 1121(b) is not applicable to the situation at hand because the State of Kansas would not be seeking to require Furniture Medic to alter the display of its federally registered trademark. The State of Kansas would be seeking to prohibit Furniture Medic from using or exhibiting the symbol "Rx" entirely — a situation not addressed by either 15 U.S.C. § 1121(b) or the court's holding inBeatrice Foods. Thus, even though 15 U.S.C. § 1121(b) is specifically preemptive in relation to specific types of state laws, given that statute's inapplicability to the situation at hand we must move to general principles of preemption.
 "It is inevitable in any dual system of government that the laws issued by one of the two governing entities will from time to time come into conflict with those of the other. When such occurs in this nation's federalist system, the supremacy clause, U.S. Const. Art. VI, cl.2, provides a simple resolution: federal must preempt inconsistent state law. Application of this precept may, however, be somewhat less than simple in a given instance. On the one hand, the courts are to invalidate not only expressly conflicting state laws, but also those which more indirectly `stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress. On the other hand, preemption doctrine is not to be applied so heavy-handedly as to deter the states from enacting all worthwhile legislation simply because it relates tangentially to some federal law. Indeed, because the states' significant lawmaking authority cannot be preserved without a presumption `that Congress did not intend to displace state law,' in the absence of persuasive reasons-either that the nature of the regulating subject matter permits no other conclusion, or that Congress has unmistakably so ordained." (Citations omitted.) Kiwanis International v. Ridgewood Kiwanis Club, 627 F. Supp. 1381, 1390 (D.N.J. 1986).
In that case, Kiwanis International sought to enjoin a local Kiwanis chapter from using the federally registered Kiwanis name and logo solely because that local chapter admitted a woman into its ranks. Kiwanis International claimed that the state law against discrimination was preempted by national interests embodied in federal trademark law. Finding that Congress' specific concerns were with "securing to the owner the good will of his business and protecting the public against spurious and false marked products," the Court found:
 "In sum, it would do violence to the delicate balance of power struck by the supremacy clause to hold that the tangential federal interest in trade-mark uniformity preempts the principled state interest in eliminating discrimination which is at issue here." 627 F. Supp. at 1392.
"The principled state interest" embodied in K.S.A. 65-636
is "the prevention of fraud and deceit . . . and in so doing to see that the public is protected from deception." 8 Kan. App. 2d. at 362. Given the Lanham Act's absence of explicit expression of intent to preempt a state prohibition aimed at preventing and protecting against fraud and deception, like the court inMobil Oil, we must look to whether the K.S.A. 65-636
stands as an indirect obstacle to the accomplishment and execution of the full purposes and objective of Congress. Regarding federal preemption and Congressional intent, the Court in Storer CableCommunications v. City of Montgomery, 806 F. Supp. 1518
(M.D.Ala. 1992) stated:
 "The [Lanham] act preempts only those state laws which directly conflict with its provisions or purposes by permitting an erosion of trade mark rights.
 "[T]he Lanham Act grants an exclusive right to a mark used to identify products, their origin or their sponsor. The act allows merchants to identify goods as their own with a distinctive mark or name and prevents others from imitating the protected mark on their own goods in such a manner that purchasers are deceived into believing that the products originated with or were approved by the mark's owner. The purpose underlying the Lanham Act is, therefore, two-fold: `One is to protect the public so it may be confident that . . . it will get the product which it asks for and wants to get,' and the other is that, `where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats.'" 806 F. Supp. at 1540-41. (Citations omitted.)
In our opinion, the Congressional goals of trademark uniformity throughout the nation and protecting the owner's investment against misappropriation and the public against falsely marked products, are not impaired by the Kansas prohibition. Paraphrasing the court inMobil Oil, it would do violence to the delicate balance of power struck by the Supremacy Clause to hold that the tangential federal interest in trade-mark uniformity preempts the principled state interest in preventing and protecting against fraud and deception in relation to the use of the symbol "Rx." Thus it is our determination that the Lanham Trademark Act does not preempt K.S.A. 65-636
and thus Furniture Medic's registration of the symbol "Rx" as a service mark does not establish an exemption to K.S.A. 65-636.
In conclusion, the taking, use or exhibition of the symbol "Rx" is limited to licensed pharmacists and entities which employ licensed pharmacists. The taking, use or exhibition of that symbol by any other entity is prohibited. The federal Lanham Trademark Act does not preempt the Kansas prohibition against the use of that symbol by other than licensed pharmacists and entities which employ licensed pharmacists. Thus registration of the symbol "Rx" as a service mark pursuant to the federal Lanham Trademark Act does not exempt a furniture refinishing and repairing company from compliance with that Kansas statutory prohibition.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm